And Cynthia Allmann Mr. Barton Chairman Most court Harvey Barton Mr. Earl Denham for the appellants We represent about 267 retirees of the hospital retirement plan of St. Louis Hospital, Jackson County, Mississippi Who were objectors to the class-action settlement? But there are three very important people who have already made a determination that This class-action settlement was as as a result of the basis of fraud and collusion and perjury The important thing is that those three people Are on the other side Now they're not nearly as important as you three Who right now for our retirees are the three most important people on the face of the planet? but for the other side We have had information given to us that has become part of the record that Number one a Person from within the legal department of Singing River Hospital Who was terminated from her job approached us this year and said there's something that you need to know Unfortunately, we did not get her subpoenaed to testify But I'm we made a detailed proffer of her testimony Who said there is the evidence in existence of fraud and collusion? Between the attorneys for the hospital and the attorneys for the class-action She said that there was evidence of ex parte judicial conduct because the attorneys for the hospital knew what was going to happen before the judge did it and there was a there was evidence of Interference by by at least one justice of the Mississippi Supreme Court who was providing interference for them That's one witness from the other side Yes, sir, we made a proffer we did not get her name is Nicole Tillman It's a proffer meaning you offered it, but it's never received in the evidence It was not received we made a proffer of what she was expected to say, but we did not get her subpoenaed judge I believe this is what happened when a subpoena is issued it is issued on the electronic system and So the second I had that subpoena issued everyone on the other side Knew that we were trying to subpoena her to testify now what was said what was done? I don't know But but she was running for 10 days and hiding out from our process server And we were unable to get her served and I understand that okay That's maybe whatever maybe the difficulties of why you don't have this testimony. You don't have that testimony. I Do not have her testimony, so what do we do with that? I mean I Yes, sir. It's an interesting story. I appreciate it, and I take it you're also the court that is accurate unfortunately It's not evidence. Yes, sir. I Agree, so let's move to something that's in the record. Okay. What what is what is in the record is? well Because the second witness Which was an employee of the law firm that represents the hospital Delivered to us surreptitiously in a plain envelope a document With a note that says something to the effect of here's evidence of a prior collusion Between these same parties again not evidence. It's a profit Here's the evidence your honor Randy Bosarge who is a supervisor for Jackson County? He's on the other side Told me personally That Lee Bond Had admitted to him that documents were shredded We put Lee Bond on the I'm sorry we put Randy Bosarge on the stand and he said Unequivocally yes, Lee Bond told me that documents were probably shredded. He had nothing to do with that Judge if you remember from the first fairness hearing Lee Bond was specifically questioned by Judge Girola as to whether any documents were shredded and he unequivocally denied that they were Okay, we accept the documents Okay, good good question Judge if you look at the finances of the hospital when this class action started three and a half years ago the hospital said We're broke We're broke. We're facing bankruptcy. We can't afford this plan We said financial documents were shredded and we've never been given a clear picture of the finances of the hospital Oh, yes, they made a document dump of tens of thousands of documents but we filed over 100 requests for production of documents and they did not answer a single one of them in accordance with the law Now what the prior opinion from this court was worried the hospital wasn't financially Solvent enough to pay this out over a few decades. You're now saying They've actually been really healthy all along and if that had been disclosed what there could have been a better settlement absolutely, judge Given it doesn't the settlement pay back everything. I know over a long period of time But from that that five-year period it's it's a fifty five million dollar settlement that stretches out over 35 years It's it's you're saying if everyone had known they were so financially healthy that there would have been a shorter time frame for putting the money back in the plan By looking by looking at the evidence today of the finances of the hospital if we had another fairness We'd have to arrive at a different conclusion The hospital in three years has banked a hundred and fifteen million dollars They have over ninety million dollars cash Today and three three and a half years ago. They had zero They've paid the bonded indebtedness down from a hundred and three million dollars to somewhere around Seventy one seventy two million. So they are making money hand over foot Our position was that they were making money back then but they were hiding Hiding those records and if you look carefully We don't you don't really have a problem I mean the last panel was concerned the hospital wasn't financially healthy enough to pay this out over all these years That's not your concern anymore. Oh, no, sir. I believe the Yes, sir. Frankly, they could almost write a check today and pay it but if you look Carefully, how do we get around the fact? I mean usually when the case comes up here and there's a first panel and they say it's these issues are all fine But we've got these it was pretty clear. They said we have these four concerns I mean judge Higginbotham was on the panel. So he knows it better than I do But they said we have these four concerns that usually limits The scope of the subsequent hearings in district court in this subsequent appeal to that those narrow Four issues, which is not what you're talking about well Wonderful question, but if you look at the last page of the opinion that this court wrote in two different places this court said that the prior decision of the district court is vacated and That means we start over Okay, well vacated to me means you completely abrogate the prior decision So so that there was more than just answering these four mandate questions. It was vacated So the judge Girola's decision doesn't doesn't exist anymore Well, I mean we vacate sentences all the time because of one little issue and you usually on remand But so back so back to your question, what can what can this panel do? Well what we've asked for repeatedly Give us an op-out Let our people make a choice and have a choice They are they are being forced to accept a mandatory class action Which for three years we've said this is not a good settlement this this settlement is not going to last There's no plan to save the plan finally But with current retirees who would I understand all the objectives are current retirees not people at the hospital now Paying in I mean current retirees as I understand have gotten every dime They're entitled to and it seems to me that people at risk under this settlement are people who are still at the hospital who might not retire and start drawing any money until 20 years from now and who knows what the Condition of the plan is going to be then correct however Part of what you said is not true Yes, they have been drawing every check that they were entitled to only because mr Denim and I stopped the termination of the plan with a series of temporary restraining orders But last month they got their first 25% benefits cut the state court judge in Contradiction to the to the agreement of this settlement Didn't give them a 60-day notice Said he sued Sponti ruled and said I'm gonna cut their benefits by 25% and take away their COLA payment So I have clients that that represents about a 39% Benefits cut over what they've made last year and judge. I'm telling you that is only the beginning. That's not the end That's only the beginning. This is a bad settlement. It's always been a bad settlement Yes, sir The chance record yes, sir Judge bail and and so We we have consistently said that this settlement is good for everyone Except the retirees and the plan beneficiary the other class that you made the current employees They're not provided for at all in this settlement There's not one provision about how they're going to get paid when they're going to get paid if they're going to get paid And so they're distinct subclasses that are unrepresented within this settlement they're paying 3% But those current employees are paying 3% No, sir. The 3% was stopped in 2014 when there was a when there was a freeze of this plan Assume that if you're going forward the plan you're still gonna tell the employees are going to be contributing to the plan That's no, sir the in fact No money has come in from the hospital since 2009 and no money has been contributed by the employees since 2014 that's part of why the the plan overall isn't going to be at a hundred percent because in 2014 it all these plans rely on current employees paying in to help fund the retiree payments That's any of these plans and the plan ended in 2014 so that's I mean that's part of the problem Is that people aren't paying in anymore But you know the record from the district court says basically the Hospital had the the ability to stop the plan whenever it wanted If you have a contract that is completely drafted by the hospital These retirees had no no input into the drafting that contract off and one Provision the contract says you're going to get a lifetime benefit and we're going to take a mandatory payroll deduction You don't have a choice and we're going to pay you a lifetime benefit But you have another part of the contract that says well we get to terminate the contract whenever we want to is It really fair to allow the hospital to stop paying into their plan their portion to lie about it to the employees and Then to be in breach of contract and say oh well We get to we get to have this other provision that says we get to terminate the plan No, sir They're number one in breach of contract number two I believe it's judge Jones on this panel called called the entire thing Illusory when you have that kind of when you kind of have that kind of conflicting paragraphs within the contract So our retirees they unfortunate reality is there's retirement plans all over the country that are in When companies the underlying company has financial problems, and there's not as many current employees paying in these pension plans have trouble the Misconduct that this settlement was focused on was the five years the company wasn't paying in which was a big problem And and as I understand it the the settlement does compensate fully for those five years now There's other problems caused by the fact in 2014 the plan stopped But it did fully 55 million fully cover back the money they owe Right and that's the issue the panel had last what will happen is The benefits will continue to be reduced into the point where it's negligible what their retirement check will be in fact There are retirees that will be living what should the settlement? What would a fair settlement have been a fair settlement? Well what we wanted was a hundred percent obviously But 100% of what I mean it was 100% of what they were promised of the payouts of the payout of what they were promised Would that be a fair settlement that well? Yeah, that's what we've always fought for but certainly what they got is not fair never has been It's a result of the fraud and collusion that these parties put together a deal. That's good for everybody except the retirees They're the ones that suffer and you said judge this plan was fine until 2009 the employees were paying their share It's when the hospital quit paying and lied about it that the plan got in trouble and now you're gonna You're going to give them the reward for their for their absolute malfeasance and negligence and the people that are suffering are the retirees the ones that Earned that contractual right and it's going to be taken away from without a choice Now is it fair on two separate occasions Yes, your time is expired, I'm sorry When we filed this case Singing River intended to terminate and liquidate its pension plan without Restoring any of the tens of millions of dollars of contributions that it failed to make between 2009 and 2014 Who are you representing? the Jones Apple East the Jones class Jones class This settlement. I'm sure what? Would you describe the class for me? Yes, your honor. The class are essentially all the beneficiaries of this retirement plan This Settlement restores 100% of the recoverable damages in this matter Those are the missed annual required contributions between 2009 and 2014 in addition to that it Implements new procedural protections that must be respected if modifications to the plan are made it creates Transparency about the financial condition of the hospital the plan and the repayment status it installs a special fiduciary To manage and administer the plan whose sole responsibility is to the class members We have an abuse of discretion standard in this case And the key question about the fairness of this settlement is what would objectors be able to recover? If this case goes to trial that is different from what we obtained in this settlement and at what risk The objectors want to risk Everything that we have accomplished in this case to litigate from the very beginning on this quest to obtain Lifetime benefits the full net pension liability that this plan does not guarantee And for which they have no factual or legal support we have yet to hear in four years of litigation your honor a To the full net pension liability and that's because there is not one Singing River had the right to terminate this plan. It's in the plan documents and Tort recoveries against the hospital for any if you if you say it was fraud to say they were gonna get lifetime benefits any Tort recoveries against the hospital are capped at five hundred thousand dollars under the Mississippi tort claims act And by the time any trial is over your honors the trust will be Depleted and it will be too late to save these pensions anyway That said we are limited today as judge Costa Mentioned in the previous argument by the four questions raised by the prior panel and those are the effect of the settlement on the class singing river's ability to meet its payments under the settlement the settlements treatment of any recovery by singing river in its separate litigation against KPMG and whether the timing and sequence of class counsel's fees somehow renders this settlement unfair With respect to the last point about the attorney's fees. I mean, I don't see how anything happened on remand really I guess the one thing to happen on remand is that the district court had more evidence that the Hospital was solvent so that the payout to the plan is perhaps more a higher certainty but it still does seem troubling that If it was so certain all this money is going to ultimately be put back in the plan Why not also have the attorney's fees paid out in the same? Manner because interest is being paid. So it's not like the the present value is being lost of the money There's no interest in the settlement for class counsel's fees and there's a very big difference here Your honor class counsel's fees are for services paid and rendered and completed the trust the settlement has the Set Responsive to the benefit that the class counsel has conferred and if the benefit that you've conferred it gives leaves the Is a benefit that is highly contingent upon future prospects. The question becomes why should the lawyers? and if Fees not reflect that uncertainty In other words, you're paid as if this is a certain deal and it's going forward because you get your money And what we it's just in the prior opinion is that yes, you've conferred a benefit you're entitled to fees But why should it not bear the same contingencies of the quote benefit that you conferred because that's the source of the amount of fees Think all of the testimony the supplemental fairness hearing and the objectors have conceded that the hospital has the ability to make its payments under this settlement agreement When it comes to attorneys fees Suddenly, we're very certain that there's plenty of money As you stated the prior panel's opinion appeared to be primarily concerned about whether the hospital would be able to pay its Obligations under the settlement while class counsel got this up front free and whether that risk rendered this entire settlement unfair And I think all the evidence of the supplemental fairness hearing was that the hospital had the ability to make these payments and indeed had Strong financial incentives deduce it. I'll say this to your honors. The fee is being paid on question number four Says why class counsel's fees should not be tailored to align with the uncertainty and risk that class members will bear and what we happen on appeal that you took all the uncertainties out and Paid them and I assume that the predicate of that is that they know that is that now there is no uncertainty and risk Faced by these people. Is that correct? Yes, I think there's very minimal risk and remember to your honor the trust Oh, there's no risk with your fees. You're getting all the money All the liabilities for the trust are not presently due and payable right now The trust liabilities also come due over time So it makes sense that we're going to restore this money with a guaranteed rate of return over time the attorneys have completed their work and they are there is there is Money due and payable at the present time for services rendered the district court your honor Held that it would be substantially Inequitable to require cost counsel to wait 35 years without interest to be put paid sums that are currently due and owing Particularly because attorneys What's the basis justification for the award of fees Well, your honor I'll say as an initial That has been conferred by the class council, that's right, which is a substantial benefit to class members And the risk is small that it is not going to be paid. There are huge financial incentives And why don't the attorneys take that small risk to that was the prior panel's point when we negotiated this settlement in December? That in December of 2015 We had our fees paid over a number of years which were the years that we were most concerned of that is a highly unusual for a class settlement in addition to that we Negotiated so that this was being paid on top of the settlement and not out of the settlement if this is 3,000 individual cases Or in any other class action, it's going to come out of the retirees pensions These class members aren't going to come a dime out of pocket for class councils fees But you've led back to the question in those situations you're talking about Yes, the class fees come out of the settlement some but that sum is Defined benefit that that class council has produced and what the benefit that you produce and you you have I don't question that but to the benefit that you have On behalf of the class it is is subject to risk and Great deal of uncertainty that I'm listening to you I understand it if you go back and you say well There's no longer really any on risk or uncertainty that the class members are going to get what they're entitled to because the hospital now Has the money and resources to do this? What in which event if that's true, then you would have an alignment of the of your benefits conferred and etc So let me say this your honor just for purposes of clarification of what's actually on appeal the fee orders itself Themselves were never appealed. There was no notice of appeal and that's a jurisdictional Issue what was on appeal was it was approval or not of the class settlement and one of the questions we asked of it if the appropriateness of in the fairness of settlement is whether or not the class council fees ought to be tailored with the uncertainty of risk that the class members will bear and That's what I just want to hear an answer to that's right How is that done the only issue before the court is whether the fact that class councils or fee fees are paid over a shorter period of time than the Restoration of those contributions the trust renders renders this entire settlement unfair That's the only issue before the panel today. And I think the answer to that question is clearly no There is a substantial benefit to the class They're being paid on top of instead of out of the settlement the trust liabilities come due over all this time It's not like the entire 55 million is presently due and paid right now And I think it's not due to the beneficiaries But it it was for five years not given to the plan. So the plan is owed that money now I understand that if some people working possible might not get any money until 20 years from now, but the plan is Guaranteed 6% rate of return over time so the class is being restored to the same everyone hopes and Had singing river made these payments in 0 9 10 11 12 13 and 14 and then the plan was terminated appropriately with Respect to its provisions. They're putting being put in the same position and there is absolutely no evidence in the record None whatsoever that the hospital is not going to be able to make these payments Award Now before us what's it mounted what the total dollars awarded the total amount of six point four five million your honor and none this this litigation began in 2014 and none of the plaintiffs counsel have earned have been paid Anything these are all on contingency haven't been paid anything over the course of four years and we've said Advanced substantial stumps in excess of a hundred and fifty thousand dollars to pursue this litigation Your honors, I will say with respect to the The the overall settlement said we're here to talk about the effective consequences of the class singing rivers ability to meet its payment of Obligations under the settlement and the settlements treatment of recovery by singing river and its separate litigation against KPMG We have an abuse of discretion standard here with respect to those issues. We had a supplemental fairness hearing There was a additional notice to the class We had many more expert testify you want to respond to his allegations of shredded documents and a witness who's going to say? People knew you know, we're in with the judge and all that sort of stuff I don't think it dignifies a response your honor But I will the prior I mean just focusing on focusing on what happened with the district court on Remand in terms of those allegations the the prior panel found that there was no fraud or collusion The district court found that there was no fraud or collusion twice This settlement was negotiated over the course of six months by a neutral mediator Who was the former chief judge chief judge of the Bankruptcy Court for the United States District Court of Mississippi? He filed an affidavit saying these Negotiations were professional. They were arm's length. They were conducted appropriately And with respect to the issue of shredding documents, they didn't have any evidence your honor There's no evidence in the record of that and even if there were financial documents that were shredded There's been no expert. No witness. No one who has said they make any difference to this whatsoever There have been actuaries that testified in this case There have been CPAs who have testified in this case and not one of them your honor has said that somehow there was some document that was missing that Prohibited them from coming to their conclusions about what the hospital owed to the trust and how it was going to be paid over time The objectors did not bring an expert to trial to say these are documents that are missing that prohibit me from drawing an appropriate conclusion in this matter every single court that has looked at this including the prior panel said there was absolutely no evidence of fraud or collusion in this case and Frankly I am Would just like to say that in in my career This is one of the cases that I am very most proud of and those kind of allegations with without any evidence are Just frankly Bothersome council, that's why I asked early on if there was anything in this record So as far as I'm concerned, they don't exist. So until somebody comes to the evidence The defendant at Belize Singing River and the related defendant at Belize For my portion of the argument, I'd like to focus on the two I think critical legal principles that are at issue here and then turn to what the district court actually received following the argument. The first critical principle here is the standard of review. In this case, the standard of review put the obligation on the objectors to come forward with evidence of a clear error by the district court. The district court did something wrong when this court remanded the case to the district court. Now the mandate rule here, your honors, required the district court to do exactly what the Fifth Circuit had said previously. No more, no less. And Judge Girola followed that mandate precisely. He invited the parties to submit written briefs on the four issues and then he invited the parties to participate in his second fairness hearing. This fairness hearing was conducted approximately 10 hours and the bulk of that time was used by the objectors. Now, Judge Girola was very deferential to the objectors and let them put on what was arguably completely unrelated to the four issues, but let them put on their case. As the record shows, most of the presentation by the objectors was lengthy proffers and not actual evidence. As it stands before this court right now, on the four issues, first issue being the projection of payments to the beneficiaries, the plaintiffs and Singing River both presented experts and evidence showing the best possible projections using the information they had at the time of what these beneficiaries might get over this period of time. The objectors presented no evidence and had no experts and had provided the court with no alternative projection. So the district court was left with a projection that both the plaintiffs and Singing River largely agreed on as far as percentages and numbers and no alternative. The district court found properly that the evidence was based upon credible testimony from concededly qualified experts and found that that presentation of additional information just buttressed the district court's finding previously that the settlement was fair, adequate, and reasonable. The second issue, which the court has questioned a little bit today on Singing River's ability to pay, which was a significant issue for the prior panel, has now been conceded by the objectors. Additional evidence has come forward. The evidence has been unchallenged. There's no other financial analysis or other review of documents. And the unchallenged and conceded evidence that Singing River has the ability to pay. Well, they enjoyed a very quick turnaround as I looked at the numbers. I'm not being critical about that. I don't understand what happened in the market out there that suddenly they started. That's good news, but what happened? Your Honor, it wasn't just the market. As you recall. You managed it or what? They instituted what they call a turnaround firm. The entire trustee, the entire Board of Trustees was replaced. You got somebody to run the place. In a much different way. Cost-cutting measures Of course all of that turnaround has been documented by financial evidence, which has been produced. Hundreds of thousands of pages of financial evidence have been produced and there has been a significant turnaround, which is good for the hospital, good for the community, and frankly good for this settlement. Good for the beneficiaries. And to Judge Costa's point, good for the employees that are still working there. Good for those who are at the most risk of not getting payments. So there has been a significant turnaround in the financial prospects for the hospital. One important point is the current beneficiaries, the current people receiving benefits, have received all of their payments. All of their payments throughout the dependency of this litigation. Another important point is Singing River. Well, I guess in fairness to you, but for that that turnaround window perhaps occurred but for class counsel's work. Well, Your Honor. If you hadn't had this lawsuit, I'm not sure what would have happened. And Your Honor, I can't, I can't, I can't. I don't think, I'm not suggesting you'd quarrel with that. That's a kind of a friendly observation, but in talking, in trying to look at the overall overarching fairness of this, that's a fair point. We've questioned counsel's fees, etc. But I do think that and that's why I go back to this turnaround. That's not, was not a collateral event that was always pre-existing. It came at, as I read this record, responsive to the litigation itself. And I think that's, that to me is, that's part of the benefit of class counsel's work. As I read it, maybe I'm wrong in reading this that way. No, I can't disagree. But that's the drift of my questions about why the turnaround. I can't disagree with that, Your Honor. You know, this was a significant change in the hospital and the hospital did things and certainly, I'm sure some of the impetus was the litigation and the issues with the community. Now, one point I wanted to make. So the record we had said that there had been full 100% payout still. Opposing counsel just said there has been a reduction in the last month. It's the very most recent payment and at the time of the briefing and our argument at the settlement fairs. And that was ordered by the Chancery Court upon the special review recommendation. So that is correct. Last month there has been a reduction in payments. And the settlement allows the special producer to evaluate the plan. Is the Chancery Court acting responsive to the expert advice about funding, as to the changes made to achieve the long-term benefits? I think part of the motivation for the Chancery Court and the special producer is that time is of the essence. Right now, approximately a million to a million point two is being paid out every month in benefits. It's exhausting the fund. An important point is Singing River has paid in 7.6 million dollars pursuant to the settlement, which is sat in escrow instead of being invested. If we weren't litigating right now, that money would have been invested in 2017, a banner year, and that money could have been used towards the plan. Right now, because of the time constraints, we're exhausting the plan. That's why we urge this panel to review us in an expedited way. I appreciate that. I see my time is exhausted. Thank you, Court. Thank you, sir. Mr. Barton, you have five minutes on rebuttal. Go ahead. It's nice to be before you in the morning, Judge Higginbottom, again. I'm going to speak very quickly. It's the dirtiest case I've ever tried in 46 years. The outcome was predictable from the very beginning. If you want to do something entertaining or interesting, Google Breedland Hilbert, who got appointed by the Chief Justice on to the case, and just look at him, look at his record. At a point in time, he said we would have discovery. I took two depositions. They scored real good. The judge stopped all the discovery, said he would appoint a master bret sanitary. Brett stopped all the discovery. All the discovery is gone. They talk about documents, whether they're films or they're carrying that stuff in their infirmary. They didn't produce the film. We went through 20,000 pages of meaningless documents, looking for a needle in a haystack. None of it was responsive. None of it was set out in accordance to our complaint, which was filed in Chancery, the most ancient Chancery piece that remains in practice today, and that's a bill for discovery. They didn't answer any of it right. We couldn't get any hearings. Judge Higginbottom wouldn't sit on the bench more than 20 minutes sometimes. He'd get up and run off, and we couldn't find him. He'd say, I'll see you in a month. I had him tracked over to New Orleans where he was going to his girlfriend's apartment here in the French Quarter instead of sitting on the bench. We filmed it. So you don't want to talk about the four issues that we remanded to the district court? You don't want to talk about any of those four issues that are before us? Sorry, sir. You don't want to talk about any of the four issues that are back before us? I just want to give you that background because I don't have very much time. We filmed him again on the day that they colluded together to settle the case, and all that film is in the evidence. We'll talk about a couple of things here. So coming into that, Harvey and I began to get the feeling things were not working right when they called a meeting for us to go over and work with him on the settlement. The first thing I said was when I learned what it was going to be, I said, Harvey, why don't you go ahead and see? And I stayed back. What happened is they threw out all this money in front of these lawyers. They threw out a ton of millions of dollars in front of these lawyers who are just normal people, and by definition that means they're greedy. Normal people are greedy. It takes a bit of some self-discipline to remember your profession and your creed. These lawyers then began to think of a way they could justify this horrible plan to the retirees so they could have their fees. That's troubling to me. And we were to sign an agreement that we would not tell even our clients, a confidentiality agreement. We couldn't tell them what we were doing. I wouldn't sign it. Harvey wouldn't sign it. Everybody else signed it. All the plaintiffs ran for the money. So I tore a coin in front of Hawks, and I'm not speaking bad of Hawks. It's just in nature. They'll go for it. I mean the cross-action settlements we usually see, maybe there's a recovery of $0.10 on the dollar or $0.15. The money is there. The plan calls for getting all $55 million back. I understand it's over time. That's the concern. To me, this is one of the more robust settlements. Well, you don't want to hear anything until you talk. Judge Hilburn. I do want to hear what I've got. Judge Hilburn, just one day as we were walking out of the courtroom, somebody said, well, how about dismissing this and how about dismissing that? And he did. How about stopping payments into the plan? And he did. He just stopped the payments into the plan. You know, it's crazy. There's no evidence, no reason for it. I'm stopping the payments into the plan. That's one of the reasons the plan didn't pick up. The other reason it didn't pick up is they got a new plan out there and ignored this one, stopped anyone putting money into this one, and they had the money to build it back up and they didn't use it. You can't take $35 million or $50 million that was due years ago, stretch it out over 35 years, and make it worth anything. It would be like the Germans pushing Reich marks to the bank in a bulldozer and buying a loaf of bread with them. Inflation being what it is, that money will never come back. But the hospital has the money. We're a rich county. We're a rich county. We're not a poor county. And our county used these people for time. And this is a court of equity, and that's why I'm trying to talk to you this way. I love the law so much, but the side I love the most is not the rules that people make up because the rules are always to protect business, to protect the status quo. But there's justice, too, on the other side. And it is not just. It is not just for these lawyers to take millions of dollars for the hospital to walk away, for the county not to pay one nickel into this. All they did is pay a bill to help the hospital. It's not justice for that to happen. And these people back here walked away. Some of them got $600 a month pension. And we walked out all of them. And now they've got less than that. Now they've got 25% less, and they've lost their cost of living less. They're old. They're like us. They may need this money. To me, $600 a month is not terribly much. I feed corn to my cows. Sir, your time has expired. Thank you. I take this case under advisement.